# EXHIBIT A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF QUEENS

| | |
|---|---|
| Chantese McAllister,<br><br>Plaintiff,<br><br>-against-<br><br>LVNV Funding LLC, Equifax Information Services LLC, Halsted Financial Services, LLC,<br><br>Defendants. | Index No.: 713043/2026<br><br>**AMENDED COMPLAINT** |

Plaintiff Chantese McAllister ("Plaintiff"), by and through her attorneys, Petroff Amshen LLP, as and for her Amended Complaint against LVNV Funding LLC ("LVNV"), Equifax Information Services LLC ("Equifax"), and Halsted Financial Services, LLC ("Halsted"), alleges upon personal knowledge, review of public records, and information and belief, as follows:

## PRELIMINARY STATEMENT

1. Plaintiff was the victim of identity theft, and she proved it to each defendant in writing. Each defendant nonetheless continued to collect or to report a debt it knew or should have known she did not owe. This is an action arising from Equifax's multiple, flagrant, and willful violations of the New York Fair Credit Reporting Act ("NYFCRA"), N.Y. Gen. Bus. Law ("GBL") § 380, *et seq.*, and from LVNV's negligent and willful violations of the federal Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq.*, and from LVNV's and Halsted's violations of the federal Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.*, and from LVNV's and Halsted's consumer-oriented, materially misleading conduct in the collection of a debt Plaintiff did not owe, in violation of N.Y. Gen. Bus. Law § 349(a). Equifax, one of the nation's three largest consumer reporting agencies, engaged in a pattern of conduct that demonstrates a reckless disregard for its statutory obligations, resulting in severe and ongoing harm to Plaintiff.

Equifax negligently and willfully published this false information, failed to correct it upon receiving a clear and documented dispute, and recklessly made the reporting even more damaging post-dispute. LVNV, a debt buyer that acquired Plaintiff's Account after the fraudulent charges on it had already been disputed, and that furnishes information concerning the Account to Equifax, received notice of Plaintiff's dispute and the identity theft documentation that supported it, failed to conduct the reasonable investigation the FCRA requires of a furnisher, verified the disputed information to Equifax, and continued to furnish an inflated balance and a derogatory collection status that it knew or should have known resulted from identity theft. Halsted, the collection agency to which LVNV placed the Account, mailed Plaintiff a written demand for the full inflated balance, and in doing so misrepresented the amount and legal status of a debt that LVNV and Halsted had every reason to know was the product of identity theft. None of this was inadvertent. Two of the three nationwide consumer reporting agencies deleted the Account on the strength of the same proof that Equifax and LVNV received and disregarded, and Halsted demanded payment in full without a word about the theft or about Plaintiff's dispute. That conduct exposes defendants to actual, statutory, and punitive damages, to injunctive and declaratory relief, and to Plaintiff's costs and attorneys' fees under four separate consumer-protection statutes.

**THE PARTIES, JURISDICTION, AND VENUE**

2. Plaintiff is an adult individual, residing in Queens County, and is a "consumer" as that term is defined by GBL § 380-a(b) and by 15 U.S.C. § 1681a(c).

3. LVNV is a limited liability company organized under the laws of the State of Delaware. LVNV is a special purpose entity whose primary business consists of investing in charged-off consumer receivables, including the Credit One account described below. LVNV maintains a business address at 355 South Main Street, Greenville, South Carolina 29601, and

holds debt collection agency license number 1326179-DCA issued by the New York City Department of Consumer and Worker Protection, active from January 10, 2025 through January 31, 2027. LVNV is a "person" as that term is defined by 15 U.S.C. § 1681a(b) and a furnisher of information to consumer reporting agencies within the meaning of 15 U.S.C. § 1681s-2.

4. Equifax is a limited liability company organized and existing under the laws of the State of Georgia and is a "consumer reporting agency" as defined by GBL § 380-a(e).

5. Halsted is an Illinois limited liability company that maintains a mailing address at P.O. Box 828, Skokie, Illinois 60076-0828, a telephone number of 888-955-3855, and a website at www.halstedfinancial.com. Halsted is an active limited liability company according to the records of the New York Department of State, and it has designated a registered agent for service of process within the State of New York: Corporation Service Company, 80 State Street, Albany, New York 12207. Halsted maintains a business address at 8001 Lincoln Avenue, Skokie, Illinois 60077, and holds debt collection agency license number 2039870-DCA issued by the New York City Department of Consumer and Worker Protection, active from December 13, 2024 through January 31, 2027. Halsted is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6), and Halsted identified itself as a debt collector in its written communication to Plaintiff.

6. This Court has personal jurisdiction over Equifax, LVNV, and Halsted pursuant to CPLR §§ 301 and 302.

7. Halsted is subject to the jurisdiction of this Court under CPLR § 302(a)(1) because it transacted business within the State by mailing a written demand for payment to Plaintiff at her residence in Queens County, and Plaintiff's claims against Halsted arise from that transaction.

8. Plaintiff's claims against LVNV arise under the FCRA, which provides that an action to enforce any liability created under it may be brought in any court of competent jurisdiction. 15 U.S.C. § 1681p. This Court is such a court.

9. Equifax derives substantial revenue from selling consumer reports on New York residents to New York creditors and other users.

10. The causes of action herein arose directly from Equifax's, LVNV's, and Halsted's transactions and occurrences within New York and their tortious impact on Plaintiff, a New York resident whose financial reputation was damaged within this state.

11. LVNV furnished the information concerning Plaintiff's Credit One account described below to Equifax with knowledge that the information pertained to a New York resident and would be published in consumer reports sold to creditors and other users in New York.

12. Venue is proper in Queens, as Plaintiff resides in Queens County.

## FACTUAL ALLEGATIONS

13. In or around February 2025, Plaintiff's Spectrum Mobile account was hacked, resulting in the unauthorized compromise of her SIM card and the exposure of her personal and financial information.

14. On or about February 24 and 25, 2025, unauthorized charges were incurred on Plaintiff's Chase checking account.

15. Plaintiff disputed the charges, and Chase resolved the disputes in Plaintiff's favor, made permanent the provisional credits it had issued, and issued Plaintiff a replacement account.

16. On or about February 24, 2025, unauthorized charges totaling $1,241.80 were incurred on Plaintiff's Credit One Bank, N.A. ("Credit One") credit card account ending in 3948 (the "Account").

17. The unauthorized charges consisted of nine transactions posted to the Account on February 24, 2025, seven at Foot Locker and two at eBay, ranging from $5.59 to $455.99.

18. Plaintiff did not consent to or authorize these transactions.

19. Plaintiff closed the Account in or around February 2025, after learning that her personal information had been compromised, and did not learn of the unauthorized charges until in or around April 2025, when Credit One contacted her concerning the balance.

20. On or about April 26, 2025, Plaintiff directly disputed each of the unauthorized transactions with Credit One.

21. Credit One concluded its investigation and determined that "no error has occurred," and advised Plaintiff that the disputed transactions and the related finance charges would be included in the balance of the Account and that she was responsible for paying it.

22. Credit One had issued Plaintiff a provisional credit of $1,241.80 pending its investigation, and it reversed that credit on April 29, 2025. Credit One stated that it reached its conclusion because "[t]he transaction(s) were conducted using a confirmed personal device connected to your account."

23. Despite Plaintiff's efforts to resolve the matter directly with Credit One, the bank failed to remove the fraudulent charges, failed to correct the inaccurate balance, and continued to report the Account with a delinquent status.

24. On or about July 30, 2025, Plaintiff reported the unauthorized charges to the New York City Police Department, which recorded the incident under Complaint No. 2025-101-004056 and classified it as identity theft.

25. On December 23, 2025, Plaintiff completed an Identity Theft Report with the Federal Trade Commission, FTC Report No. 195283335, identifying the Account and the fraudulent charges on it.

26. Plaintiff received a pre-dispute credit report on December 23, 2025.

27. The pre-dispute report reflected the Account as closed with a balance of $1,699.00 as reported by TransUnion and $1,774.00 as reported by Experian and Equifax, and with a payment status of between 120 and 180 days past due.

28. The balances reported on the pre-dispute report included the $1,241.80 in unauthorized charges. Credit One had advised Plaintiff that those transactions and the related finance charges would be included in the balance of the Account.

29. On or about January 27, 2026, Halsted mailed Plaintiff a letter at her residence in Far Rockaway, New York, demanding payment of the Account. The letter bears Halsted's reference number 82765672.

30. The letter states: "Halsted Financial Services, LLC is a debt collector. We are trying to collect a debt that you owe to LVNV Funding LLC. We will use any information you give us to help collect the debt."

31. The letter identifies the debt as a "Credit One Bank, N.A. account which has been sold to LVNV Funding LLC" and states that the date of last payment was February 13, 2025, which is the date of last payment that TransUnion and Experian reported for the Account.

32. The letter states that as of December 26, 2025, Plaintiff owed $1,774.70, that no interest, fees, payments, or credits were applied to the Account between that date and the date of the letter, and that the "Total amount of the debt now" is $1,774.70. The detachable portion of the

letter states a "Balance Due" of $1,774.70 and directs Plaintiff to make her check payable to Halsted Financial Services, LLC.

33. The $1,774.70 that Halsted demanded included the $1,241.80 in charges that Plaintiff never made or authorized, together with the finance charges assessed on those unauthorized charges.

34. Neither Halsted nor LVNV disclosed in the letter that the balance demanded included charges Plaintiff had disputed with Credit One as unauthorized, or that Credit One had issued and then reversed a provisional credit in the amount of those charges.

35. The January 27, 2026 letter was Halsted's initial communication with Plaintiff in connection with the collection of the Account.

36. The letter did not state that unless Plaintiff disputed the validity of the debt, or any portion of it, within thirty days after receipt of the notice, the debt would be assumed to be valid by Halsted.

37. The letter did not state that if Plaintiff notified Halsted in writing within that thirty-day period that the debt or any portion of it was disputed, Halsted would obtain verification of the debt or a copy of a judgment and mail a copy of that verification or judgment to Plaintiff.

38. The letter did not state that upon Plaintiff's written request within that thirty-day period, Halsted would provide Plaintiff with the name and address of the original creditor if different from the current creditor.

39. Halsted did not send Plaintiff any separate written notice containing those statements within five days after its initial communication, or at any time thereafter.

40. Upon information and belief, Halsted mailed the letter in the course of collecting the Account for LVNV, as LVNV's agent and within the scope of that agency.

41. On February 20, 2026, Plaintiff transmitted a comprehensive dispute package to the credit reporting agencies (the "CRAs").

42. The dispute package contained: (1) a formal letter detailing the fraudulent charges on the Account and identifying the origin of those charges as identity theft; (2) a request for the removal of the Account or an update to the Account so as to accurately report it; (3) Plaintiff's personal identification; (4) a copy of Plaintiff's FTC identity theft report; and (5) a complete copy of Plaintiff's pre-dispute credit report.

43. Upon receipt of Plaintiff's dispute, the CRAs were obligated, pursuant to GBL § 380-f(a), to promptly reinvestigate and record the current status of the disputed information.

44. The FCRA likewise required each CRA that received Plaintiff's dispute to provide notification of the dispute to the person that furnished the disputed information within five business days, and to include with that notification all relevant information regarding the dispute that the CRA received from Plaintiff. 15 U.S.C. § 1681i(a)(2).

45. Upon receiving notice of Plaintiff's dispute from a CRA, LVNV, as a furnisher of information, was required to conduct a reasonable investigation with respect to the disputed information, to review all relevant information provided to it by the CRA, to report the results of its investigation to the CRA, and, if the disputed information was found to be inaccurate or incomplete or could not be verified, to promptly modify, delete, or permanently block the reporting of that information. 15 U.S.C. § 1681s-2(b)(1).

46. LVNV was required to complete its investigation, review, and report within the period the FCRA allows the CRA to complete its reinvestigation, which is thirty days from the CRA's receipt of the dispute, subject to a fifteen-day extension where the consumer submits additional relevant information during that period. 15 U.S.C. §§ 1681i(a)(1), 1681s-2(b)(2).

47. On March 5, 2026, Equifax responded to Plaintiff's dispute, expressly declining to block the disputed information.

48. Equifax stated that it was "contacting each company that provided the disputed information to verify the information on your behalf," and that it would "forward a copy of the documents you have provided to each creditor for their review."

49. Plaintiff's dispute identified the Account by creditor name and account number. LVNV reports the Account to Equifax under the same account number that Credit One used.

50. Upon information and belief, Equifax transmitted notice of Plaintiff's dispute to LVNV, as the furnisher of the disputed information, through the automated consumer dispute verification process that the CRAs and furnishers use, together with the documentation Plaintiff had submitted, including her FTC Identity Theft Report.

51. Upon information and belief, LVNV responded to Equifax's notice by verifying the disputed information as accurate, without modifying the reported balance, deleting the Account, or blocking its reporting, and without reporting that Plaintiff disputed the Account.

52. On April 14, 2026, Plaintiff obtained a post-dispute credit report that revealed that the Account was now furnished under LVNV.

53. The post-dispute credit report reflected that LVNV had acquired the Account from Credit One and had begun reporting it to Equifax as a new collection tradeline with an opening date of January 1, 2026, and that LVNV had last reported the Account to Equifax on April 1, 2026, after Plaintiff's dispute and after Equifax's March 5, 2026 response.

54. The post-dispute credit report also revealed that TransUnion and Experian had deleted the Account, while Equifax had continued its wrongful reporting of the Account.

55. Equifax reported the Account, as furnished by LVNV, as an open collection account with a derogatory status, a balance of $1,774.00, a past due amount of $1,774.00, and a payment status of 120 days late, with the comment “Collection account,” and without any notation that Plaintiff disputed the Account.

56. Equifax maintains and uses a comment indicating that a consumer disputes an account. Plaintiff’s April 14, 2026 Equifax file displays the comment “Consumer disputes this account information” on seven other tradelines. Equifax applied no such comment to the Account.

57. Following Plaintiff’s dispute, Equifax continued to report the Account as a derogatory collection, with LVNV listed as the furnisher.

58. The $1,774.00 balance that LVNV furnished and Equifax reported included the $1,241.80 in unauthorized charges and the finance charges assessed on them, and was therefore inaccurate and materially misleading.

59. Reporting the Account as a collection account with a balance owed and a delinquent payment history, without any indication that the balance was the product of identity theft or that Plaintiff disputed it, conveyed to any user of Plaintiff’s Equifax consumer report that Plaintiff had incurred and failed to pay charges that she never authorized.

60. Upon information and belief, when LVNV purchased the Account from Credit One, it received or had access to Credit One’s records concerning the Account, including the record of Plaintiff’s April 2025 dispute of the charges included in the reported balance.

61. Upon information and belief, LVNV did not review the identity theft documentation that Plaintiff submitted with her dispute, did not contact Plaintiff, did not obtain or review the transaction records for the disputed charges, and instead compared the disputed

information against the account data it had received from Credit One and verified the Account on that basis.

62. Upon information and belief, LVNV's practice upon receiving a consumer dispute from a CRA is to confirm that the disputed information matches the data in its own records and to verify the information on that basis, without any substantive inquiry into whether the information is accurate.

63. As a direct and proximate result of defendants' conduct, Plaintiff has suffered concrete injury to her credit score and financial reputation.

64. Plaintiff's credit scores on the April 14, 2026 report reflect that injury. Plaintiff's TransUnion and Experian scores, which no longer reflected the Account, were 751 and 750, respectively, while her Equifax score, which continued to reflect LVNV's derogatory collection tradeline, was 699.

65. Upon information and belief, Equifax has furnished consumer reports containing LVNV's reporting of the Account to third parties since Plaintiff's dispute.

66. Plaintiff has spent more than twenty hours attempting to correct the reporting of the Account, including gathering documentation, preparing and transmitting her dispute, and reviewing her credit reports. That time, together with the out-of-pocket expenses Plaintiff has incurred, has significantly affected her daily life.

67. Plaintiff has suffered anxiety, stress, humiliation, and emotional distress as a direct and proximate result of defendants' conduct.

68. Plaintiff's injuries are directly traceable to the defendants' conduct.

## CAUSES OF ACTION

### COUNT I: Violations of GBL § 380-f
### Negligent and Willful Failure to Properly Reinvestigate and Correct Disputed Information
### *Against Equifax*

69. Plaintiff re-alleges and incorporates by reference each of the preceding paragraphs.

70. Plaintiff is a "consumer," and Equifax is a "consumer reporting agency," as defined by GBL § 380-a.

71. GBL § 380-f(a) mandates that if a consumer disputes any item of information contained in his file, and such dispute is directly conveyed to the consumer reporting agency by the consumer, the consumer reporting agency shall promptly reinvestigate and record the current status of such information.

72. The presence of contradictory information in a consumer's file shall not, in and of itself, constitute reasonable grounds for believing the dispute is frivolous.

73. Plaintiff conveyed a dispute to Equifax regarding the inaccurate information.

74. These disputes were supported by documentation and specific assertions of fact.

75. Upon receipt of Plaintiff's dispute, Equifax was statutorily obligated to conduct a prompt and reasonable reinvestigation to determine the accuracy of the disputed information. A reasonable reinvestigation includes notifying the furnisher of the disputed information of the dispute, as Equifax advised Plaintiff it would do.

76. Upon notification from Equifax, LVNV had a duty under 15 U.S.C. § 1681s-2(b) to conduct a reasonable investigation of the disputed information and to report the results of that investigation to Equifax.

77. Equifax failed to conduct prompt and reasonable reinvestigations of the disputed information.

78. The investigations carried out were inadequate and unreasonable, as evidenced by the continued reporting of inaccurate information about the Account on credit reports obtained from Equifax and the failure to delete information that was demonstrably inaccurate.

79. GBL § 380-f(b) requires that if, after reinvestigation, an item is found to be in error or can no longer be verified, the consumer reporting agency shall promptly expunge the item, otherwise correct the file, and refrain from reporting the item in subsequent consumer reports.

80. Equifax failed to comply with this mandate.

81. GBL § 380-f(c) provides that if, after conducting a reinvestigation, the consumer reporting agency is unable to resolve any remaining differences between the statements made by its sources and the consumer, it shall (1) promptly indicate in the file that the item is disputed, (2) permit the consumer to file a statement concerning the nature of the dispute, (3) include the consumer's statement of the dispute in all subsequent credit reports containing the information in question, and (4) clearly note in all subsequent consumer reports that the item is disputed by the consumer.

82. The obligations imposed by GBL § 380-f(c)(1) and (4) are unconditional. The statute makes the filing of a statement a right of the consumer under GBL § 380-f(c)(2), not a condition of the agency's separate duties to indicate the dispute in the file and to note the dispute in subsequent consumer reports. Only the duty imposed by GBL § 380-f(c)(3), to carry the consumer's statement forward, depends on the consumer filing one.

83. Equifax's reinvestigation did not resolve the differences between Plaintiff and the source of the disputed information, and Equifax continued to report the Account.

84. Equifax neither promptly indicated in Plaintiff's file that the Account was disputed nor clearly noted in subsequent consumer reports that Plaintiff disputed the Account, in violation of GBL § 380-f(c)(1) and (4).

85. Equifax maintains a comment for precisely that purpose and applied it elsewhere in this same file. Plaintiff's April 14, 2026 Equifax file displays the comment "Consumer disputes this account information" on seven other tradelines and displays no comment of any kind indicating that Plaintiff disputed the Account.

86. GBL § 380-f(d) further requires that if any item disputed and reinvestigated is found to be in error or can no longer be verified, upon completion of the reinvestigation of all items disputed, the agency shall promptly mail the consumer a corrected written copy of the file, reflecting any changes.

87. GBL § 380-m provides that any consumer reporting agency or user of information which is negligent in failing to comply with any requirement imposed under Article 25 of the GBL is liable to the consumer for actual damages, together with the costs of the action and reasonable attorneys' fees.

88. Equifax was negligent in failing to comply with GBL § 380-f. Equifax negligently failed to conduct a prompt and reasonable reinvestigation of the information Plaintiff disputed, negligently failed to review and verify the accuracy of the information LVNV furnished, negligently failed to expunge or otherwise correct information that was in error or that could no longer be verified, negligently continued to report that information in subsequent consumer reports, and negligently failed to indicate in Plaintiff's file and to note in subsequent consumer reports that Plaintiff disputed the Account.

89. The clear nature of the disputed inaccuracies, the failure to correct them after a dispute supported by documentation, and Equifax's continued reporting of the Account after the other two nationwide consumer reporting agencies deleted it all constitute, at a minimum, negligence.

90. GBL § 380-l provides that any consumer reporting agency or user of information which willfully and knowingly fails to comply with any requirement imposed under Article 25 of the GBL with respect to any consumer is liable to that consumer for actual damages, punitive damages, and the costs of the action together with reasonable attorneys' fees.

91. Equifax's failures to comply with GBL § 380-f were also knowing and willful, or so reckless as to constitute willful non-compliance.

92. Evidence of Equifax's willful non-compliance includes, but is not limited to:

a) The continued reporting of clearly identified and documented inaccuracies after receiving a specific and detailed dispute from Plaintiff.

b) The persistence of Equifax's inaccurate reporting of the Account even after Plaintiff formally disputed the information and supported her dispute with documentation establishing its inaccuracy, which demonstrates a conscious or reckless disregard for Plaintiff's rights and for the truth-finding purpose of the reinvestigation process.

c) Equifax's retention of the Account on Plaintiff's file after TransUnion and Experian deleted the same Account in response to the same dispute and the same supporting documentation.

d) The failure of Equifax to delete information that was either demonstrably false or could not be verified through a reasonable reinvestigation, and its decision instead to continue reporting the Account without so much as a notation that Plaintiff disputed it.

e) Equifax's failure to note the Account as disputed while displaying the comment "Consumer disputes this account information" on seven other tradelines in the same file, which shows that Equifax had the means to note Plaintiff's dispute and did not use it.

93. Equifax knew or should have known of its obligations under the NYFCRA and nonetheless engaged in a course of conduct that violated Plaintiff's rights. Its actions demonstrate

a willful intent to disregard the mandates of the NYFCRA or, at the very least, a reckless disregard for whether it was complying.

94. Plaintiff is entitled to recover from Equifax her actual damages and the costs of this action together with reasonable attorneys' fees pursuant to GBL § 380-m, and her actual damages, punitive damages, and the costs of this action together with reasonable attorneys' fees pursuant to GBL § 380-l.

**COUNT II: Violations of GBL § 380-j(e)**
**Negligent and Willful Failure to Maintain Reasonable Procedures to Assure Maximum Possible Accuracy**
***Against Equifax***

95. Plaintiff re-alleges and incorporates by reference each of the preceding paragraphs.

96. GBL § 380-j(e) provides that "[c]onsumer reporting agencies shall maintain reasonable procedures designed to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

97. Equifax failed to maintain reasonable procedures designed to assure maximum possible accuracy of the information contained in Plaintiff's consumer reports.

98. This failure is evidenced by the persistent and severe inaccuracies related to the Account, making it appear as though Plaintiff owes a debt that she has not paid, and by Equifax's continued reporting of the balance, payment history, and account status for the Account even after Plaintiff's formal dispute.

99. That failure is further demonstrated by Equifax's continued reporting of the Account after the other two nationwide consumer reporting agencies deleted it in response to the same dispute and the same supporting documentation.

100. These failures to maintain reasonable procedures to assure maximum possible accuracy existed prior to Plaintiff's dispute and contributed to the initial harm suffered by Plaintiff.

101. Equifax was negligent in failing to comply with GBL § 380-j(e). Equifax negligently failed to maintain reasonable procedures designed to assure the maximum possible accuracy of the information it reported concerning Plaintiff, and it is liable to Plaintiff under GBL § 380-m for the actual damages that failure caused, together with the costs of this action and reasonable attorneys' fees.

102. Equifax's failure to maintain those procedures was also knowing and willful, or so reckless as to constitute willful non-compliance within the meaning of GBL § 380-l. Equifax designed and controls the procedures by which it collects, evaluates, and reports the information that furnishers supply to it, and it reported the Account as it did with knowledge of the dispute Plaintiff had submitted and of the documentation supporting it.

103. Plaintiff is entitled to recover from Equifax her actual damages, punitive damages, and the costs of this action together with reasonable attorneys' fees, pursuant to GBL §§ 380-l and 380-m.

**COUNT III: Violations of the FCRA, 15 U.S.C. § 1681c-2**
***Against Equifax***

104. Plaintiff re-alleges and incorporates by reference each of the preceding paragraphs.

105. 15 U.S.C. § 1681c-2(a) requires a consumer reporting agency to block the reporting of any information in a consumer's file that the consumer identifies as resulting from an alleged identity theft, not later than four business days after the agency receives appropriate proof of the consumer's identity, a copy of an identity theft report, the consumer's identification of the information, and a statement by the consumer that the information is not information relating to any transaction by the consumer.

106. Plaintiff's February 20, 2026 dispute package supplied each of those four items. It contained Plaintiff's personal identification, a copy of her FTC Identity Theft Report, an

identification of the Account and of the fraudulent charges reported on it, and a statement that those charges arose from identity theft and were not transactions Plaintiff made or authorized.

107. Equifax was therefore required to block the reporting of the information relating to the Account no later than four business days after it received that package.

108. Equifax did not block the information. On March 5, 2026, Equifax expressly declined to block the disputed information, and it continued to report the Account thereafter, including in Plaintiff's April 14, 2026 file.

109. The reason Equifax gave for declining was that it was contacting the company that provided the disputed information in order to verify it. Furnisher verification is not a ground on which a consumer reporting agency may decline to block information resulting from identity theft. A consumer reporting agency may decline to block, or rescind a block, only where the block was made in error, where it was made on the basis of a material misrepresentation of fact by the consumer, or where the consumer obtained possession of goods, services, or money as a result of the blocked transaction. 15 U.S.C. § 1681c-2(c).

110. None of those grounds was present, and Equifax gave Plaintiff no notice that it had made any such determination.

111. That TransUnion and Experian deleted the Account from Plaintiff's files on the strength of the same dispute package confirms that the information was subject to blocking and that Equifax's refusal was unreasonable.

112. Equifax's failure to block was willful. Equifax received an FTC Identity Theft Report together with an express identification of the fraudulent charges, declined to block, continued to report the Account as an open collection account with a derogatory status, and applied

no dispute notation to the Account even though it applied that notation to seven other tradelines in the same file.

113. Plaintiff is entitled to recover from Equifax her actual damages or statutory damages of not less than $100 and not more than $1,000, punitive damages, and the costs of the action together with reasonable attorneys' fees. 15 U.S.C. § 1681n. In the alternative, Equifax's failure to block was negligent and Plaintiff is entitled to her actual damages and the costs of the action together with reasonable attorneys' fees. 15 U.S.C. § 1681o.

**COUNT IV: Violations of the FCRA, 15 U.S.C. § 1681e(b)**
***Against Equifax***

114. Plaintiff re-alleges and incorporates by reference each of the preceding paragraphs.

115. 15 U.S.C. § 1681e(b) requires a consumer reporting agency, whenever it prepares a consumer report, to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates.

116. Equifax prepared and furnished consumer reports concerning Plaintiff that reported the Account as an open collection account with a derogatory status, a balance of $1,774.00, a past due amount of $1,774.00, and a payment status of 120 days late.

117. That information was inaccurate. Of the reported balance, $1,241.80 consisted of charges Plaintiff never made or authorized, together with the finance charges assessed on those charges.

118. Equifax did not follow reasonable procedures to assure maximum possible accuracy. It accepted LVNV's verification of the Account after having been given Plaintiff's FTC Identity Theft Report and her supporting documentation, it reported the Account as a new collection tradeline with an opening date of January 1, 2026, and thereby made the reporting more

damaging after the dispute than before it, and it omitted the dispute notation that it maintains and routinely applies to other tradelines in Plaintiff's own file.

119. Equifax's conduct was willful, and in the alternative negligent. Plaintiff is entitled to recover her actual damages or statutory damages of not less than $100 and not more than $1,000, punitive damages, and the costs of the action together with reasonable attorneys' fees. 15 U.S.C. §§ 1681n and 1681o.

**COUNT V: Violations of the FCRA, 15 U.S.C. § 1681i**
***Against Equifax***

120. Plaintiff re-alleges and incorporates by reference each of the preceding paragraphs.

121. Upon notice of a dispute from a consumer, 15 U.S.C. § 1681i(a)(1)(A) requires a consumer reporting agency to conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate, and within thirty days either to record the current status of the disputed information or to delete the item from the consumer's file.

122. 15 U.S.C. § 1681i(a)(4) requires the agency to review and consider all relevant information submitted by the consumer.

123. 15 U.S.C. § 1681i(a)(5)(A) requires the agency, if the disputed information is found to be inaccurate or incomplete or cannot be verified, promptly to delete or modify that information.

124. Equifax did not conduct a reasonable reinvestigation. Its response was to forward Plaintiff's documents to LVNV and adopt LVNV's verification, without independently evaluating the FTC Identity Theft Report, the pre-dispute credit report, or the documentation of the reversed provisional credit that Plaintiff had submitted.

125. Equifax did not review and consider that information. Had it done so, it could not have treated the reported balance as verified, because the documentation established that $1,241.80 of the balance arose from charges Plaintiff did not make or authorize.

126. Equifax neither deleted nor modified the Account after its reinvestigation. It continued to report the Account through and after April 1, 2026, and reported it in a form more damaging than before the dispute.

127. The unreasonableness of Equifax's reinvestigation is confirmed by the fact that TransUnion and Experian deleted the Account on the strength of the same dispute package while Equifax continued to report it.

128. Equifax's conduct was willful, and in the alternative negligent. Plaintiff is entitled to recover her actual damages or statutory damages of not less than $100 and not more than $1,000, punitive damages, and the costs of the action together with reasonable attorneys' fees. 15 U.S.C. §§ 1681n and 1681o.

**COUNT VI: Violations of 15 U.S.C. § 1681s-2(b)**
**Failure to Reasonably Investigate and Correct Disputed Information**
***Against LVNV***

129. Plaintiff re-alleges and incorporates by reference each of the preceding paragraphs.

130. LVNV is a "person" as defined by 15 U.S.C. § 1681a(b) and a furnisher of information to consumer reporting agencies subject to the requirements of 15 U.S.C. § 1681s-2.

131. After receiving notice from a consumer reporting agency of a dispute concerning the completeness or accuracy of information it furnished, a furnisher must conduct an investigation with respect to the disputed information, review all relevant information provided by the consumer reporting agency, and report the results of the investigation to the consumer reporting agency. 15 U.S.C. § 1681s-2(b)(1)(A), (B), and (C).

132. If the investigation finds that the disputed information is incomplete or inaccurate, the furnisher must report those results to every other nationwide consumer reporting agency to which it furnished the information. 15 U.S.C. § 1681s-2(b)(1)(D).

133. If the disputed information is found to be inaccurate or incomplete, or cannot be verified, the furnisher must promptly modify the information, delete it, or permanently block its reporting. 15 U.S.C. § 1681s-2(b)(1)(E).

134. The investigation that the FCRA requires of a furnisher must be reasonable in light of the information provided to it, and a furnisher that does no more than confirm that the disputed information matches the data in its own records does not satisfy that obligation.

135. Equifax notified LVNV of Plaintiff's dispute and, as Equifax advised Plaintiff it would, forwarded to LVNV the documentation Plaintiff had submitted, including her dispute letter and her FTC Identity Theft Report, which identified the Account, the unauthorized charges, and the identity theft from which they resulted.

136. The information LVNV furnished concerning the Account was inaccurate and materially misleading. LVNV reported the Account as a collection account with a balance of $1,774.00 that included $1,241.80 in charges Plaintiff neither made nor authorized, together with the finance charges assessed on those unauthorized charges.

137. LVNV failed to conduct a reasonable investigation with respect to the disputed information after receiving notice of Plaintiff's dispute from Equifax, in violation of 15 U.S.C. § 1681s-2(b)(1)(A).

138. LVNV failed to review all relevant information that Equifax provided to it, including Plaintiff's dispute letter and her FTC Identity Theft Report, in violation of 15 U.S.C. § 1681s-2(b)(1)(B).

139. LVNV reported to Equifax that it had verified the disputed information as accurate when a reasonable investigation would have shown that the reported balance and status were inaccurate, incomplete, or unverifiable, in violation of 15 U.S.C. § 1681s-2(b)(1)(C).

140. LVNV failed to modify, delete, or permanently block the reporting of the disputed information, and instead continued to furnish the Account to Equifax with the same inaccurate balance and derogatory collection status, in violation of 15 U.S.C. § 1681s-2(b)(1)(E).

141. LVNV failed to report that Plaintiff disputed the Account, which rendered the information it furnished incomplete and materially misleading, because a user of Plaintiff's consumer report would not learn that the reported balance was the subject of a documented identity theft dispute.

142. LVNV's failures to comply with 15 U.S.C. § 1681s-2(b) were negligent or willful.

**COUNT VII: Negligent Non-Compliance with the FCRA, 15 U.S.C. § 1681o**
***Against LVNV***

143. Plaintiff re-alleges and incorporates by reference each of the preceding paragraphs.

144. The FCRA provides that any person who is negligent in failing to comply with any requirement imposed under the FCRA with respect to any consumer is liable to that consumer for any actual damages sustained by the consumer as a result of the failure, together with the costs of the action and reasonable attorneys' fees. 15 U.S.C. § 1681o(a).

145. LVNV was negligent in failing to comply with its obligations under 15 U.S.C. § 1681s-2(b).

146. LVNV negligently failed to conduct a reasonable investigation with respect to the disputed information upon receiving notice of Plaintiff's dispute from Equifax.

147. LVNV negligently failed to review all relevant information that Equifax provided to it, including the documentation submitted by Plaintiff identifying the unauthorized charges and the identity theft from which they resulted.

148. LVNV negligently reported to Equifax that the disputed information had been verified as accurate.

149. LVNV negligently continued to furnish inaccurate information concerning the Account to Equifax following receipt of Plaintiff's dispute, without modifying, deleting, or blocking the inaccurate reporting.

150. LVNV negligently failed to report the Account as disputed by the consumer in its reporting to Equifax.

151. The clear nature of the disputed inaccuracies, the supporting identity theft documentation provided by Plaintiff, and LVNV's failure to correct or withdraw its reporting despite specific notice of the unauthorized charges underlying the reported delinquency all constitute, at a minimum, negligence.

152. As a direct and proximate result of LVNV's negligent non-compliance with the FCRA, Plaintiff sustained the actual damages described above, including injury to her credit standing, the time and expense of attempting to correct the reporting of the Account, and emotional distress.

153. Plaintiff is entitled to recover from LVNV her actual damages, the costs of this action, and reasonable attorneys' fees. 15 U.S.C. § 1681o(a).

**COUNT VIII: Willful Non-Compliance with the FCRA, 15 U.S.C. § 1681n**
***Against LVNV***

154. Plaintiff re-alleges and incorporates by reference each of the preceding paragraphs.

155. The FCRA provides that any person who willfully fails to comply with any requirement imposed under the FCRA with respect to any consumer is liable to that consumer for any actual damages sustained by the consumer as a result of the failure or damages of not less than $100 and not more than $1,000, such amount of punitive damages as the court may allow, and the costs of the action together with reasonable attorneys' fees. 15 U.S.C. § 1681n(a).

156. A person willfully fails to comply with the FCRA when it acts knowingly or in reckless disregard of its statutory obligations.

157. LVNV's failures to comply with its statutory obligations under 15 U.S.C. § 1681s-2(b) were knowing and willful, or so reckless as to constitute willful non-compliance.

158. Evidence of LVNV's willful non-compliance includes, but is not limited to:

a) The continued furnishing of clearly inaccurate information concerning the Account after receiving specific and documented notice of Plaintiff's dispute and of the unauthorized charges underlying the reported balance.

b) The persistence of LVNV's reporting of the Account as a collection account reflecting a balance owed by Plaintiff even after Plaintiff formally disputed the information and provided identity theft documentation establishing that the reported balance included charges that she had not authorized, which demonstrates a conscious or reckless disregard for Plaintiff's rights and for the accuracy of the information being furnished.

c) LVNV's failure to conduct any meaningful investigation of the validity of the charges comprising the reported balance, despite receiving clear and documented notice of the fraud, opting instead to verify the Account and to continue reporting it without correction or withdrawal.

d) LVNV's failure to report the Account as disputed, which concealed from users of Plaintiff's consumer report the existence of a documented identity theft dispute concerning the reported balance.

e) LVNV's reliance, upon information and belief, on a dispute-handling process that verifies disputed information whenever it matches the data in LVNV's own records, without review of the documentation the consumer submitted, a practice that LVNV maintains despite its familiarity with the requirements of 15 U.S.C. § 1681s-2(b) as a furnisher of information concerning a large volume of purchased consumer debts.

159. LVNV knew or should have known of its obligations under the FCRA and nonetheless engaged in a course of conduct that violated Plaintiff's rights.

160. Its actions demonstrate a willful intent to disregard the mandates of the FCRA or, at the very least, a reckless disregard for whether it was complying.

161. Plaintiff is entitled to recover from LVNV her actual damages or damages of not less than $100 and not more than $1,000, punitive damages in an amount to be determined by the Court, and the costs of this action together with reasonable attorneys' fees. 15 U.S.C. § 1681n(a).

**COUNT IX: Violations of the FDCPA, 15 U.S.C. §§ 1692e and 1692f**
***Against LVNV and Halsted***

162. Plaintiff re-alleges and incorporates by reference each of the preceding paragraphs.

163. Plaintiff is a "consumer" as that term is defined by 15 U.S.C. § 1692a(3).

164. The Account is a "debt" as that term is defined by 15 U.S.C. § 1692a(5), in that it arose out of a consumer credit card account that Plaintiff used for personal, family, or household purposes.

165. Halsted is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6). Halsted regularly collects or attempts to collect debts owed or due another, and it identified itself to Plaintiff as a debt collector.

166. LVNV is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6) because the principal purpose of its business is the collection of debts. LVNV acquires charged-off consumer receivables and liquidates them, including by placing them with collection agencies such as Halsted and by furnishing information concerning them to consumer reporting agencies.

167. Halsted's January 27, 2026 letter was a communication in connection with the collection of a debt. It demanded payment of a stated balance, told Plaintiff that Halsted was "trying to collect a debt," and directed her where to send her check.

168. 15 U.S.C. § 1692e prohibits a debt collector from using any false, deceptive, or misleading representation or means in connection with the collection of any debt, and specifically prohibits the false representation of the character, amount, or legal status of any debt. 15 U.S.C. § 1692e(2)(A).

169. The letter falsely represented the amount and the legal status of the debt. It demanded $1,774.70 as a sum Plaintiff owed when $1,241.80 of that amount consisted of charges Plaintiff never made or authorized, together with the finance charges assessed on those unauthorized charges.

170. 15 U.S.C. § 1692e(10) prohibits the use of any false representation or deceptive means to collect or attempt to collect any debt. The letter presented the entire balance as a debt Plaintiff owed and disclosed nothing about the identity theft from which the charges arose or about Plaintiff's dispute of those charges with the original creditor.

171. 15 U.S.C. § 1692f prohibits a debt collector from using unfair or unconscionable means to collect or attempt to collect any debt, and specifically prohibits the collection of any amount unless that amount is expressly authorized by the agreement creating the debt or permitted by law. 15 U.S.C. § 1692f(1).

172. Federal law limits a cardholder's liability for the unauthorized use of a credit card to $50. 15 U.S.C. § 1643(a); 12 C.F.R. § 1026.12(b). Neither the agreement creating the debt nor any law permitted Halsted or LVNV to collect from Plaintiff the amount of the unauthorized charges.

173. 15 U.S.C. § 1692e(8) prohibits a debt collector from communicating to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed.

174. After receiving notice of Plaintiff's dispute from Equifax, LVNV continued to communicate credit information concerning the Account to Equifax through and including April 1, 2026, and did not communicate that Plaintiff disputed the Account.

175. Halsted likewise communicated credit information concerning the Account without communicating that the debt was disputed. Halsted's January 27, 2026 letter demanded the full balance of the Account and contained no statement that Plaintiff disputed the Account or the charges comprising it. Halsted collected the Account as LVNV's agent, and notice of Plaintiff's dispute is imputed to Halsted through LVNV.

176. LVNV is liable for Halsted's conduct. Halsted collected the Account as LVNV's agent and within the scope of that agency, and a debt collector that engages another debt collector to collect on its behalf is answerable for that collector's conduct.

177. As a direct and proximate result of the conduct of Halsted and LVNV, Plaintiff sustained actual damages, including emotional distress and the time and expense of responding to a written demand for money she did not owe.

178. Plaintiff is entitled to recover from Halsted and LVNV her actual damages, additional statutory damages, and the costs of this action together with reasonable attorneys' fees. 15 U.S.C. § 1692k(a).

**COUNT X: Violations of the FDCPA, 15 U.S.C. § 1692g**
***Against LVNV and Halsted***

179. Plaintiff re-alleges and incorporates by reference each of the preceding paragraphs.

180. 15 U.S.C. § 1692g(a) requires a debt collector, within five days after its initial communication with a consumer in connection with the collection of any debt, to send the consumer a written notice containing the information specified in that subsection, unless that information is contained in the initial communication or the consumer has paid the debt.

181. Among the required statements is a statement that unless the consumer disputes the validity of the debt, or any portion of it, within thirty days after receipt of the notice, the debt will be assumed to be valid by the debt collector. 15 U.S.C. § 1692g(a)(3).

182. Also required is a statement that if the consumer notifies the debt collector in writing within that thirty-day period that the debt or any portion of it is disputed, the debt collector will obtain verification of the debt or a copy of a judgment and mail a copy of that verification or judgment to the consumer. 15 U.S.C. § 1692g(a)(4).

183. Also required is a statement that upon the consumer's written request within that thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor if different from the current creditor. 15 U.S.C. § 1692g(a)(5).

184. Halsted's January 27, 2026 letter was its initial communication with Plaintiff in connection with the collection of the Account, and it contained none of those three statements.

185. Halsted did not send Plaintiff a written notice containing those statements within five days after that initial communication, and Plaintiff had not paid the debt.

186. Halsted thereby violated 15 U.S.C. § 1692g(a).

187. The omissions deprived Plaintiff of the mechanism the statute gave her to stop collection of a debt she did not owe. Had the letter disclosed her right to dispute the debt in writing and to obtain verification, Plaintiff could have required Halsted to substantiate the $1,241.80 in unauthorized charges and to cease collection until it did so.

188. LVNV is liable for Halsted's violation. Halsted sent the letter as LVNV's agent and within the scope of that agency.

189. As a direct and proximate result of the conduct of Halsted and LVNV, Plaintiff sustained actual damages, including emotional distress and the time and expense of responding to a written demand for money she did not owe. Plaintiff is entitled to recover from Halsted and LVNV her actual damages, additional statutory damages, and the costs of this action together with reasonable attorneys' fees. 15 U.S.C. § 1692k(a).

**COUNT XI: Deceptive Acts and Practices, N.Y. General Business Law § 349**
***Against LVNV and Halsted***

190. Plaintiff re-alleges and incorporates by reference each of the preceding paragraphs.

191. GBL § 349(a) declares unlawful all deceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state.

192. A claim under GBL § 349 requires consumer-oriented conduct, an act or practice that is misleading in a material way, and injury resulting from that act or practice.

193. The conduct of LVNV and Halsted was consumer-oriented. Halsted's January 27, 2026 letter was a form collection letter addressed to Plaintiff in her capacity as a consumer, and LVNV and Halsted each hold an active debt collection agency license issued by the New York City Department of Consumer and Worker Protection, license numbers 1326179-DCA and 2039870-DCA respectively, under which they collect consumer debts from New York consumers as a matter of routine business practice.

194. The letter was misleading in a material way. It presented $1,774.70 as an amount Plaintiff owed when $1,241.80 of that sum consisted of charges Plaintiff never made or authorized, together with the finance charges assessed on those charges, and it disclosed nothing about the identity theft from which the charges arose or about Plaintiff's dispute of those charges with the original creditor. A reasonable consumer acting reasonably under the circumstances would have been misled as to the amount and the legal status of the debt.

195. New York law prohibits a principal creditor or its agent from claiming, or attempting or threatening to enforce, a right with knowledge or reason to know that the right does not exist. GBL § 601(8). LVNV and Halsted demanded payment of the unauthorized charges when they knew or had reason to know that no right to collect those charges existed, because federal law limits a cardholder's liability for the unauthorized use of a credit card to $50. 15 U.S.C. § 1643(a).

196. LVNV and Halsted are also subject to the regulations of the New York State Department of Financial Services governing debt collection by third-party debt collectors and debt buyers. 23 NYCRR Part 1. Halsted collects charged-off consumer debts owed to others, and LVNV purchases and liquidates charged-off consumer receivables. Each is a debt collector within the meaning of 23 NYCRR § 1.1.

197. Those regulations require a debt collector, within five days after its initial communication with a consumer concerning a charged-off debt, to provide clear and conspicuous written notification of specified information about that debt, including the name of the original creditor and an itemization of the interest, fees, payments, and credits assessed or applied since charge-off, unless that information was contained in the initial communication. 23 NYCRR § 1.2(b). On information and belief, neither LVNV nor Halsted provided Plaintiff with those disclosures.

198. Those regulations further provide that when a consumer disputes, orally or in writing, the validity of a charged-off debt or the debt collector's right to collect it, the debt collector must inform the consumer that she may request substantiation of the debt. 23 NYCRR § 1.4(a). A debt collector that receives such a request must provide written substantiation within sixty days and must cease collection of the debt until it does so. 23 NYCRR § 1.4(b).

199. Plaintiff disputed the fraudulent charges with the original creditor before LVNV acquired the Account, and LVNV thereafter received notice of Plaintiff's dispute and of her identity theft documentation from Equifax. Neither LVNV nor Halsted ever informed Plaintiff that she could request substantiation of the Account. Halsted instead demanded payment of the full balance, and notice of Plaintiff's dispute is imputed to Halsted through LVNV, for whom Halsted collected as agent.

200. The Superintendent of Financial Services promulgated these regulations to protect New York consumers from deceptive and unfair collection practices. The failure of LVNV and Halsted to comply with them, in the course of collecting charges Plaintiff never authorized, is further evidence that their conduct was consumer-oriented and materially misleading within the meaning of GBL § 349.

201. Plaintiff was injured as a result of that conduct. She sustained emotional distress and expended time and money responding to a written demand for money she did not owe.

202. Plaintiff is entitled to recover from LVNV and Halsted her actual damages, or fifty dollars, whichever is greater, together with reasonable attorneys' fees, and the Court may increase that award to an amount not to exceed three times the actual damages, up to one thousand dollars, because the violations were willful and knowing. GBL § 349(h).

**COUNT XII: Declaratory Judgment, CPLR § 3001**
***Against LVNV and Halsted***

203. Plaintiff re-alleges and incorporates by reference each of the preceding paragraphs.

204. CPLR § 3001 authorizes the Court to render a declaratory judgment having the effect of a final judgment as to the rights and other legal relations of the parties to a justiciable controversy.

205. A justiciable controversy exists between Plaintiff on the one hand and LVNV and Halsted on the other. LVNV and Halsted assert that Plaintiff owes $1,774.70 on the Account. Plaintiff asserts that she owes nothing on the $1,241.80 in unauthorized charges or on the finance charges assessed on those charges.

206. Federal law limits a cardholder's liability for the unauthorized use of a credit card to $50. 15 U.S.C. § 1643(a); 12 C.F.R. § 1026.12(b). Plaintiff neither made nor authorized the $1,241.80 in charges and received no goods, services, or money as a result of them.

207. LVNV acquired the Account by assignment from Credit One and took no greater right in the Account than Credit One held. The limitation on Plaintiff's liability runs against LVNV, and against Halsted as LVNV's collection agent, as it would have run against Credit One.

208. The controversy is not academic. LVNV continued to furnish information concerning the Account to Equifax through and including April 1, 2026, and LVNV and Halsted continue to hold the Account for collection. Absent a declaration, Plaintiff remains exposed to further collection activity and to continued adverse reporting on the same disputed balance.

209. Plaintiff is entitled to a judgment declaring that she is not liable to LVNV or to Halsted for the $1,241.80 in unauthorized charges on the Account, or for any finance charge, interest, fee, or other amount assessed on those charges, and that her liability on the Account, if any, does not include those amounts.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully demands judgment against Equifax, LVNV, and Halsted as follows:

A. Awarding Plaintiff actual damages against Equifax pursuant to GBL §§ 380-l and 380-m and against LVNV pursuant to 15 U.S.C. §§ 1681n and 1681o, in an amount to be determined at trial, for harm to her creditworthiness, including the depression of her Equifax credit score below her scores at the other nationwide consumer reporting agencies, emotional distress, humiliation, anxiety, and damage to her reputation;

B. Awarding Plaintiff, as against LVNV and in the alternative to actual damages, statutory damages of not less than $100 and not more than $1,000 pursuant to 15 U.S.C. § 1681n(a)(1)(A);

C. Awarding Plaintiff punitive damages against Equifax pursuant to GBL § 380-l and against LVNV pursuant to 15 U.S.C. § 1681n(a)(2) to punish Equifax and LVNV for their willful and reckless misconduct and to deter them and others from similar conduct in the future, in an amount to be determined at trial;

D. Awarding Plaintiff the costs of this action, together with reasonable attorneys' fees, pursuant to GBL §§ 380-l and 380-m as against Equifax and pursuant to 15 U.S.C. §§ 1681n(a)(3) and 1681o(a)(2) as against LVNV;

E. Awarding Plaintiff actual damages against LVNV and Halsted pursuant to 15 U.S.C. § 1692k(a)(1);

F. Awarding Plaintiff additional statutory damages against LVNV and Halsted pursuant to 15 U.S.C. § 1692k(a)(2)(A);

G. Awarding Plaintiff the costs of this action, together with reasonable attorneys' fees, against LVNV and Halsted pursuant to 15 U.S.C. § 1692k(a)(3);

H. Awarding Plaintiff her actual damages, or fifty dollars, whichever is greater, against LVNV and Halsted pursuant to GBL § 349(h), and increasing that award to an amount not to exceed three times the actual damages, up to one thousand dollars, for their willful and knowing violations;

I. Awarding Plaintiff the costs of this action, together with reasonable attorneys' fees, against LVNV and Halsted pursuant to GBL § 349(h);

J. Awarding Plaintiff actual damages against Equifax pursuant to 15 U.S.C. §§ 1681n and 1681o for its violations of 15 U.S.C. §§ 1681c-2, 1681e(b), and 1681i, in an amount to be determined at trial;

K. Awarding Plaintiff, as against Equifax and in the alternative to actual damages, statutory damages of not less than $100 and not more than $1,000 pursuant to 15 U.S.C. § 1681n(a)(1)(A);

L. Awarding Plaintiff punitive damages against Equifax pursuant to 15 U.S.C. § 1681n(a)(2), in an amount to be determined at trial;

M. Awarding Plaintiff the costs of this action, together with reasonable attorneys' fees, against Equifax pursuant to 15 U.S.C. §§ 1681n(a)(3) and 1681o(a)(2);

N. Declaring that Plaintiff is not liable to LVNV or to Halsted for the $1,241.80 in unauthorized charges on the Account, or for any finance charge, interest, fee, or other amount assessed on those charges;

O. Granting equitable and declaratory relief, including, but not limited to, an order:

   a. Directing Equifax to delete all adverse, inaccurate, incomplete, and unverified information related to the Account from Plaintiff's credit file;

   b. Permanently enjoining Equifax from re-reporting this or any similar inaccurate information concerning the Account in the future;

   c. Directing Equifax to conduct a full, proper, and thorough reinvestigation of all items disputed by Plaintiff in accordance with the NYFCRA;

   d. Directing Equifax to provide a true and accurate corrected copy of Plaintiff's file to Plaintiff and, upon Plaintiff's request, to notify any person designated by Plaintiff who

received information regarding the Account during the previous year that an error existed and to furnish that person with the corrected information, pursuant to GBL § 380-f(b) and (d);

e. Directing Equifax to block the reporting of all information relating to the Account pursuant to 15 U.S.C. § 1681c-2;

f. Permanently enjoining LVNV and Halsted from making any further attempt to collect from Plaintiff the $1,241.80 in unauthorized charges or any finance charge, interest, fee, or other amount assessed on those charges;

g. Directing LVNV to withdraw the Account from collection, to recall it from Halsted and from any other collection agency to which it has been placed, and to refrain from selling, assigning, or otherwise placing the Account for collection;

h. Directing LVNV to cease furnishing information concerning the Account to any consumer reporting agency and to request the deletion of the Account from Plaintiff's file at each consumer reporting agency to which it has furnished information concerning the Account.

P. Awarding Plaintiff pre-judgment interest pursuant to CPLR § 5001.

**JURY DEMAND**

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated: Brooklyn, New York
August 28, 2026

PETROFF AMSHEN LLP
*Attorneys for Plaintiff,*
Chantese McAllister

*/s/ Maria G. Garber*
Maria G. Garber, Esq.
1795 Coney Island Avenue, Third Floor
Brooklyn, New York 11230
Telephone: (718) 336-4200
Email: mgarber@petroffamshen.com